UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-22101-Civ-COOKE/MCALILEY

CLARA BENDER,

    Plaintiff
vs.

MIAMI SHORES VILLAGE,

    Defendant.
_____/

**AMENDED ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

THIS MATTER is before me on Defendant Miami Shores Village's (the "Village") Motion for Summary Judgment. (ECF No. 63). I have reviewed the record, the arguments, and the relevant legal authorities. For the reasons explained below, the Motion for Summary Judgment is granted.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it relates to substantive law at issue in the case and may affect the outcome of the nonmoving party's claim. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id*. Rule 56(c) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotations omitted). The nonmoving party "may not rest upon the mere allegations or denials of [her] pleading, but . . .

must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.  The court must view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).  However, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion [or] grant summary judgment." Fed. R. Civ. P. 56(e).

In support of the Opposition to the Motion for Summary Judgment (ECF No. 69), Plaintiff Clara Bender filed an unsworn declaration (ECF No. 70), which she claims to be based on personal knowledge.  Ms. Bender's Statement of Material Facts in Opposition to the Motion for Summary Judgment (ECF No. 72) relies exclusively on the declaration's factual assertions.  Many portions of the declaration are not based upon personal knowledge, lack even a semblance of a factual foundation, and contradict Ms. Bender's deposition testimony.  "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).  "[I]nadmissible hearsay cannot be considered on a motion for summary judgment." *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) (internal quotations and citations omitted).  "'[N]aked assertions' are not enough to place in dispute a genuine issue of material fact." *Scalone v. Home Depot U.S.A., Inc.*, 280 F. App'x 905, 908 (11th Cir. 2008) (citing *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1332 (11th Cir. 1998) (explaining unsupported or unexplained assertions are not evidence of discriminatory intent).  Moreover, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation,

previously given clear testimony." *Van T. Junkins and Assoc., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). Accordingly, paragraphs 2, 4-6, 8-13, 17-20, 22-24, 26, 28, 30-37 of the declaration are stricken from the record and are not considered in my review of the Village's Motion for Summary Judgment.

## Background

The following facts are undisputed unless otherwise noted. Ms. Bender is an African American female. On July 31, 1995, the Village hired Ms. Bender as a Data Processing Specialist within the Village's Finance Department. Ms. Bender worked 30 hours per week, which is the minimum number of hours required to be considered a full time employee and to receive full time employment benefits. In the spring of 2007, the Florida Legislature enacted property tax reform measures that resulted in significant reductions to the budgets of all Florida local government entities. In response to the budget reduction, the Village engaged in a comprehensive reorganization, which involved internal audits, budget restructures, and the consolidation of multiple positions. In May 2007, the Village consolidated the roles of the Finance Clerk/Receptionist and Finance Clerk – Accounts Payable. Yolanda Thomas, an African American female, was offered the position but declined to assume the role and increased responsibilities.

On June 21, 2007, Mark Malatak, the Village Finance Director, died unexpectedly. To assist with the Village's reorganization and budget restructure, the Village hired Holly Hugdahl as a part-time financial consultant. Ms. Hugdahl's primary responsibilities were to prepare the 2007/2008 budget and to oversee the Finance Department. On June 25, 2007, the Village hired Micheline Ellis, a Caucasian female, to perform the consolidated role of Finance Clerk/Receptionist that was originally offered to Ms. Thomas. In July 2007, the Village

implemented an automated phone system. After Ms. Ellis complained of being unable to handle the volume of incoming calls, Barbara Estep, the Village Clerk, designated Ms. Bender as the individual to receive calls relating to sanitation issues. Ms. Hugdahl also assigned Ms. Bender the responsibility of receiving the daily cash collected by the Village cashier for various Village services. Ms. Bender interpreted the assignment of increased work responsibilities to be a demotion and a discriminatory employment action. On August 30, 2007, the Village formally eliminated Ms. Thomas's position and laid her off. Ms. Bender vocally complained to Village management that Ms. Thomas's termination was unlawful.

On September 24, 2007, while Ms. Bender was dealing with a death in the family, Ms. Hugdahl asked other Finance Department employees why Ms. Bender was out of the office. Around this same time, Ms. Hugdahl also stated that Ms. Bender's salary was too high. Ms. Bender interpreted Ms. Hugdahl's inquiries and statements to be harassing and discriminatory in nature. On September 27, 2007, the Village announced that Ms. Hugdahl would be hired to function as the Acting Finance Director until the Village could find a permanent replacement for Mr. Malatak. That same day, Ms. Hugdahl changed Ms. Bender's title from Data Processing Specialist to Accounting Clerk, and lowered Ms. Bender's employment classification. The change in job title did not affect Ms. Bender's salary, benefits or work location. Ms. Bender, however, interpreted the action to be a retaliatory demotion. In late September 2007, Ms. Bender met with Ms. Hugdahl to discuss the reassignment of Ms. Ellis's responsibilities. At the conclusion of the meeting, Ms. Bender told Ms. Hugdahl that "God is not pleased with what is going on in here." Ms. Hugdahl objected to the use of God's name in the workplace and instructed Ms. Bender to refrain from imposing her religion on others. Ms. Bender interpreted Ms. Hugdahl's reaction to be religious discrimination. On October 8, 2007, a memorandum

signed by Ms. Hugdahl was placed in Ms. Bender's personnel file regarding the series of events and discussions that had occurred in September between Ms. Bender and Ms. Hugdahl. Ms. Estep placed the memorandum in Ms. Bender's personnel file, although the memorandum was exclusively intended for Ms. Hugdahl's personal record. After learning of its existence, Ms. Bender complained that the memorandum was inaccurate and that Ms. Hugdahl's failure to provide Ms. Bender a copy of the memorandum or discuss its contents was a breach of her employment contract.

On December 4, 2007, Ms. Bender submitted a 13-page memorandum to Village management, complaining of harassment, discrimination, emotional stress, defamation of character, breach of contract and slander on the part of Ms. Hugdahl and Ms. Estep. In mid-December 2007, Ms. Hugdahl instructed Ms. Bender to leave the building that housed the Finance Department if Ms. Bender elected not to attend a holiday luncheon hosted by another Village department. Ms. Bender interpreted Ms. Hugdahl's instructions to be humiliating and harassing. On December 21, 2007, Ms. Bender submitted a supplemental memorandum complaining of additional harassment, discrimination, and retaliation. That same day, Ms. Bender alleges that she received three disciplinary letters from Village management that threatened her with termination. Absent the allegations in the Amended Complaint, the record does not reference any direct disciplinary measures taken by Village management.

The Village promptly investigated Ms. Bender's allegations and referred her complaints to its outside counsel. On January 9, 2008, during an impartial hearing and investigation, Ms. Bender's attorney directed Ms. Bender to refrain from discussing her claims with the Village's outside counsel and limited the hearing to questions that were not already addressed in Ms. Bender's personnel file. On February 11, 2008, the Village's outside counsel issued a report

regarding Ms. Bender's allegations, and summarily found that Ms. Bender failed to assert valid claims for harassment, discrimination or retaliation.  The report highlighted Ms. Bender's prior evaluations, pay progression, complaints and disciplinary actions.  The report also recommended that the Village take appropriate measures to clarify its disciplinary procedures and internal policies regarding statements about God in the workplace.

On October 23, 2008, Ms. Bender filed a formal charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  In late October 2008, Ms. Hugdahl ordered Carolyn Modeste, the only other African American female in the Finance Department, to perform Ms. Bender's yearly evaluation.  Ms. Modeste told Ms. Hugdahl that the task was not a part of her job description and refused to perform the evaluation.  It is undisputed that Ms. Bender did not receive a performance evaluation for 2007, 2008, and 2009 because Ms. Hugdahl did not have adequate knowledge of Ms. Bender's quality of work.

The EEOC issued Ms. Bender right to sue on January 11, 2010, and on April 16, 2010, Ms. Bender filed a Complaint in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.  The Village removed the action to this Court on June 25, 2010. Ms. Bender and Ms. Modeste were the named plaintiffs in the original Complaint.  On March 17, 2009, the Miami Shores Police Department and the Florida Department of Law Enforcement initiated an investigation as to missing funds from the Village.  On May 5, 2010, Ms. Modeste was indicted by a grand jury and charged with multiple counts of grand theft related to her employment with the Village.  On February 1, 2011, Ms. Modeste was severed from Ms. Bender's Complaint and terminated as a party plaintiff.  Ms. Modeste later filed a formal notice of voluntary dismissal (ECF No. 48).  On February 3, 2011, Ms. Bender filed an Amended Complaint (ECF No. 22), asserting claims for discrimination on the basis of race and religion in

violation of Title VII of the Civil Rights Act of 1694, 42 U.S.C. § 2000e-2 (Count I), retaliation in violation of 42 U.S.C. § 2000e-3 (Count II), and violation under 42 U.S.C. § 1981 (Count III).

## Discussion

### *Ms. Bender's Title VII Claims are Untimely*

Ms. Bender alleges that she was harassed, discriminated against on the basis of her race and religion, and retaliated against for complaining of discriminatory acts against others in violation of Title VII and 42 U.S.C. § 1981.[1] The Village contends that Ms. Bender's Title VII claims are time barred. I agree. Claims filed under Title VII must be made within 180 days after the alleged unlawful employment practice occurred, or by the State or local agency with the authority to seek relief within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). In other words, "[i]n a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. Discrete acts of discrimination include termination, failure to promote, denial of transfer, hiring decisions, work assignments, and retaliation claims. *Id.* at 114; *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 970 (2008). Ms. Bender filed her formal charge of

---

[1] Ms. Bender relies heavily on the employment circumstances of her coworkers to support her claim that the Village habitually engaged in discriminatory conduct. Ms. Bender, however, does not have standing to assert her coworkers' claims and they are not relevant to Ms. Bender's allegations of discrimination. *See Allen v. Wright*, 468 U.S. 737, 755 (1984) (an injury arising from discrimination "accords a basis for standing only to those persons who are personally denied equal treatment by the challenged discriminatory conduct").

discrimination 308 days after she alleges to have been subjected to the last discrete act of discrimination and/or retaliation. Ms. Bender's Title VII claims are indeed time barred.[2] Accordingly, summary judgment is granted as to Counts I and II.[3]

***Ms. Bender's § 1981 Claims Fail as a Matter of Law***

Ms. Bender alleges that the Village "intentionally engaged in unlawful employment practices and discrimination" in violation of 42 U.S.C. § 1981 by increasing her work responsibilities, issuing disciplinary warnings, failing to give her raises and bonuses, failing to perform yearly evaluations, placing restraints on the verbal expression of her religious beliefs and placing "false documents" in her personnel file. Section 1981 protects the equal right of "[a]ll persons within the jurisdiction of the United States" to "make and enforce contracts" without respect to race. 42 U.S.C. § 1981(a). The term "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b). "Any

---

[2] Even assuming Ms. Bender's Title VII claims were timely filed, the Amended Complaint fails to assert valid claims of discrimination and retaliation. Title VII claims are evaluated according to the type of evidence presented by the plaintiff. *See Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999). Ms. Bender provides neither direct nor circumstantial evidence of racial or religious discrimination. *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (elements of prima facie case of racial discrimination); *see also Morrissette-Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1321 (11th Cir. 2007) (elements of prima facie case of religious discrimination). There is no issue of material fact that the Village had legitimate non-discriminatory reasons for their employment actions against Ms. Bender. *McDonnell Douglas*, 411 U.S. 792 (1973); *see also Combs v. Plantation Patters*, 106 F.3d 1519, 1527-28 (11th Cir. 1997). Ms. Bender also fails to establish a prima facie case of retaliation in that she fails to establish that she "suffered a materially adverse employment action." *Dixon v. The Hallmark Co., Inc.*, 672 F.3d 849, 856 (11th Cir. 2010).

[3] The Amended Complaint's preamble and factual background asserts parallel discrimination claims under the Florida Civil Rights Act, Fla. Stat. § 760, *et seq.*, ("FCRA"). "Because the FCRA is modeled after Title VII, and claims brought against it are analyzed under the same framework, the state-law claims do not need separate discussion and their outcome is the same as the federal ones." *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010) (citations omitted).

claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship' … under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).

To establish a prima facie case under § 1981, a plaintiff must show: (1) that she is a racial minority; (2) that the defendant intended to discriminate against her on the basis of race; and (3) that the discrimination concerns one or more of the activities enumerated in the statute. *Jackson v. BellSouth Telecomm's*, 372 F.3d 1250, 1270 (11th Cir. 2004). There is no question that Ms. Bender, an African American, is a member of a racial minority. Nor is there a question as to whether the discrimination alleged concerns Ms. Bender's right to enjoy the benefits, privileges, terms or conditions of her employment. The only issue that needs to be addressed here is whether the Village intentionally discriminated against Ms. Bender. Similar to the Equal Protection Clause, "§ 1981 … can only be violated by purposeful discrimination." *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982); *see also Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 524 n. 2 (11th Cir. 1994) (the *McDonnell Douglas* framework, 411 U.S. 792, "also applies to claims brought under 42 U.S.C. § 1981, which requires the plaintiff to prove intentional discrimination"). "The test for intentional discrimination in suits under § 1981 is the same as the formulation used in Title VII discriminatory treatment cases." *Ferrill v. Park Group, Inc.*, 168 F.3d 468, 472 (11th Cir. 1999). Accordingly, a plaintiff must establish discrimination through direct or circumstantial evidence. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004). As with her Title VII claims, Ms. Bender fails to assert a prima facie case for a § 1981 violation.[4] The record evidence fails to provide factual support for

---

[4] Ms. Ellis is Ms. Bender's only reference to a similarly situated non-minority comparator. The record reflects that Ms. Ellis and Ms. Bender had significantly different employment classifications and responsibilities. "Although a comparator need not have the same job title as

Ms. Bender's claims that the Village acted with racial animus. Rather, the record clearly establishes that Ms. Bender has a history of reacting negatively to normal supervisory activity. "It is not the court's role to second-guess the wisdom of an employer's decisions as long as the decisions are not racially motivated." *Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1341 (11th Cir. 2000). Accordingly, summary judgment is also granted as to Count III.

### Conclusion

For the reasons explained in this Order, I hereby **ORDER and ADJUDGE** that the Village's Motion for Summary Judgment (ECF No. 63), is **GRANTED**. The Clerk is directed to **CLOSE** this case. All pending motions are **DENIED** *as moot*.

**DONE and ORDERED** in chambers at Miami, Florida this 8th day of February 2012.

*/s/ Marcia G. Cooke*
MARCIA G. COOKE
United States District Judge

---

the plaintiff to be a sufficient comparator, 'material differences' in 'ranks and responsibilities' may render any comparison impossible without 'confusing apples with oranges.'" *Lane v. McKeithen*, 423 F. App'x 903, 906 (11th Cir. 2011) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)). In other words, a prima facie case of discrimination will not be found where a plaintiff merely alleges that an employee of a different race was treated more favorably where there are material differences between the two job functions. *See id.*